United States District Court
Eastern District of Michigan
Southern Division

ORIGINAL

United States of America,

        Plaintiff,

                              Case No. 24-20599

v.

                              Hon. Brandy R. McMillion

Naveed Aslam,

        Defendant.

_____/

# Plea Agreement

The United States of America and the defendant, Naveed Aslam, have reached a plea agreement under Federal Rule of Criminal Procedure 11. The plea agreement's terms are:

## 1.    Count of Conviction

The defendant will plead guilty to Count 11 of the Indictment. Count 11 charges the defendant with illegally selling or trading prescription drugs under 21 U.S.C. §§ 353(c)(3)(A), 331(t), and 333(a)(2).

## 2.    Statutory Maximum Penalties

The defendant understands that the count to which he is pleading guilty carries the following maximum statutory penalties:

| Count 1 | Term of imprisonment: | 3 years |
| | Fine: | $10,000 |
| | Term of supervised release: | 3 years |

## 3.    Agreement to Dismiss Remaining Charges

If the Court accepts this agreement and imposes sentence consistent with its terms, the United States Attorney's Office for the Eastern District of Michigan will move to dismiss any remaining charges in the indictment against the defendant in this case. Specifically, the United States Attorney's Office will move to dismiss Counts 1-10 of the Indictment.

## 4.    Agreement Not to Bring Additional Charges

If the Court accepts this agreement and imposes sentence consistent with its terms, the United States Attorney's Office for the Eastern District of Michigan will not bring additional charges against the defendant for the conduct reflected in the Indictment or factual basis.

## 5.    Elements of Count of Conviction

The elements of Count 11 are:

1. The defendant sold or traded (and offered to sell or trade) certain drugs, namely, certain oncological drugs.

2. These certain drugs were available only by prescription, that is, they were "intended for use by man" and were—based on their

toxicity or other potentiality for harmful effect, the method of their use, and the collateral measures necessary to their use—not safe for use except under the supervision of a practitioner licensed by law to administer such drug (e.g., a licensed physician).

3. The drugs the defendant sold or traded (and offered for sale or trade) were previously purchased by a health care entity, that is, by a person or entity that provides diagnostic, medical, surgical, or dental treatment, or chronic or rehabilitative care.

4. The defendant's conduct was committed with the intent to defraud or mislead.

**6.    Factual Basis**

The parties agree that the following facts are true, accurately describe the defendant's role in the offense, and provide a sufficient factual basis for the defendant's guilty plea:

Naveed Aslam was a licensed oncologist practicing medicine at Somerset Hematology Oncology, P.C. (Somerset) in Royal Oak, Michigan. Aslam and Somerset were "health care entities" under 21 C.F.R. § 203.3(q) because Aslam provided medical treatment to patients at Somerset. Through Somerset, Aslam had access to several prescription cancer medications that he could buy from drug distributors, including Distributor-1.

Samer Youssef owned and operated SMA Patient Care LLC (SMA), which was both a retail pharmacy and engaged in the wholesale distribution of prescription drugs in Troy and Rochester Hills, Michigan.

Youssef operated SMA with the assistance of Houda Bazzi. As part of Youssef and Bazzi's business, they learned about customers that wanted to purchase certain prescription drugs, and they worked to acquire the prescription drugs and re-sell them at a profit. Youssef and Bazzi, however, did not have access to several prescription cancer drugs.

As a health care entity, it was unlawful for Aslam to buy and resell prescription cancer drugs, and instead he was only allowed to buy drugs to administer to his patients. Despite this fact, in January 2023, Aslam knowingly, and with the intent to deceive, falsely and misleadingly represented to Distributor-1 that he was ordering and acquiring for his patients 15 units of the prescription cancer drug Tivdak 1x40mg vials at a cost of about $91,710. Aslam received the vials at Somerset and then sold the 15 units of Tivdak to SMA, Youssef, and Bazzi for about $105,750 on about January 5, 2023.

## 7.   Stipulated Offenses

The parties stipulate under USSG § 1B1.2(c) that the defendant has committed the following additional offenses and that his sentencing guidelines should be calculated as if he had been convicted of additional counts charging those offenses:

From in or around early 2019, and continuing through about August 2023, Naveed Aslam, with the intent to mislead, conspired and agreed with others, including Samer Youssef and Houda Bazzi, to illegally sell prescription cancer drugs to or through SMA Patient Care LLC (SMA), in violation of 21 U.S.C. § 353(c)(3)(A), 21 U.S.C. §§ 331(t), and 333(a)(2), which are sections of the Food, Drug, and Cosmetic Act. 21 U.S.C. § 301, *et seq.* That Act regulates the manufacture, labeling, and distribution of drugs in the United States, and protects the health and safety of the American public.

At some point, but by no later than 2019, Aslam and Youssef came to an agreement that Youssef and Bazzi would identify prescription cancer drugs that Youssef and Bazzi's customers wanted to buy, Youssef and Bazzi worked with Aslam to buy the prescription cancer drugs from Aslam's sources, and Aslam would sell the drugs to SMA for SMA to sell to its customers. Under their agreement, Aslam, Youssef, and Bazzi made money on these transactions.

As a health care entity, it was unlawful for Aslam to buy and resell prescription cancer drugs, and instead he was only allowed to buy drugs to administer to his patients. Thus, Aslam made numerous false and misleading statements to Distributor-1, at least one drug manufacturer,

and others, to be able to buy the cancer drugs to resell. For example, he falsely stated that he intended to administer or dispense the drugs to treat patients pursuant to valid prescriptions. In reality, immediately after receiving the drugs, Aslam contacted Bazzi and Youssef, and they arranged to pick up the drugs from Somerset for resale to their customers.

From 2019 to 2023, Aslam used his medical license and arrangement with Distributor-1 to purchase more than 20 different prescription cancer drugs that he resold to and through SMA, including, for example, Enhertu®, Padcev®, Poteligeo®, Tivdak®, and Trodelvy®.

Aslam profited from his purchase and resale of illegally purchased prescription cancer drugs by sharing the profit when SMA resold the drugs for more than Aslam charged SMA for the drugs and receiving rebates and discounts from Distributor-1 based on the amount of qualifying drugs he purchased.

From June 2019 through August 2023, Aslam bought from Distributor-1 more than $16 million in prescription drugs that he re-sold to SMA. Based on a comparison of records showing how much Aslam paid Distributor-1 and how much SMA paid Aslam and Somerset, Aslam received approximately $2,601,568.47 in proceeds from the sales.

The government has no information or knowledge that, as part of his offense conduct, Aslam neglected his duty of care to his patients or that his offense conduct caused or risked any harm to his patients.

## 8.   Advice of Rights

The defendant has read the Indictment, has discussed the charges and possible defenses with his attorney, and understands the crimes charged. The defendant understands that, by pleading guilty, he is waiving many important rights, including the following:

A.   The right to plead not guilty and to persist in that plea;

B.   The right to a speedy and public trial by jury;

C.   The right to be represented by counsel—and, if necessary, have the court appoint counsel—at trial;

D.   The right to be presumed innocent and to require the government to prove the defendant guilty beyond a reasonable doubt at trial;

E.   The right to confront and cross-examine adverse witnesses at trial;

F.   The right to testify or not to testify at trial, whichever the defendant chooses;

G.   If the defendant chooses not to testify at trial, the right to have the jury informed that it may not treat that choice as evidence of guilt;

H.   The right to present evidence or not to present evidence at trial, whichever the defendant chooses; and

I.   The right to compel the attendance of witnesses at trial.

9.    **Collateral Consequences of Conviction**

The defendant understands that his conviction here may carry additional consequences under federal or state law. The defendant understands that, if he is not a United States citizen, his conviction here may require him to be removed from the United States, denied citizenship, and denied admission to the United States in the future. The defendant further understands that the additional consequences of his conviction here may include, but are not limited to, adverse effects on the defendant's immigration status, naturalized citizenship, right to vote, right to carry a firearm, right to serve on a jury, and ability to hold certain licenses or to be employed in certain fields. The defendant understands that no one, including the defendant's attorney or the Court, can predict to a certainty what the additional consequences of the defendant's conviction might be. The defendant nevertheless affirms that the defendant chooses to plead guilty regardless of any immigration or other consequences from his conviction.

10.    **Defendant's Guideline Range**

A.    **Court's Determination**

The Court will determine the defendant's guideline range at sentencing.

## B.    Acceptance of Responsibility

The government recommends under Federal Rule of Criminal Procedure 11(c)(1)(B) that the defendant receive a two-level reduction for acceptance of responsibility under USSG § 3E1.1(a). Further, if the defendant's offense level is 16 or greater and the defendant is awarded the two-level reduction under USSG § 3E1.1(a), the government recommends that the defendant receive an additional one-level reduction for acceptance of responsibility under USSG § 3E1.1(b). If, however, the government learns that the defendant has engaged in any conduct inconsistent with acceptance of responsibility—including, but not limited to, making any false statement to, or withholding information from, his probation officer; obstructing justice in any way; denying his guilt on the offense(s) to which he is pleading guilty; committing additional crimes after pleading guilty; or otherwise demonstrating a lack of acceptance of responsibility as defined in USSG § 3E1.1—the government will be released from its obligations under this paragraph, will be free to argue that the defendant not receive *any* reduction for acceptance of responsibility under USSG § 3E1.1, and will be free to argue that the defendant receive an enhancement for obstruction of justice under USSG § 3C1.1.

### C.    Other Guideline Recommendations

The parties also recommend under Federal Rule of Criminal Procedure 11(c)(1)(B) that the following guideline provisions apply:

- 2N2.1 & 2B1.1: base offense level under 21 U.S.C. §§ 331(t) & 333 is 6;

- 2N2.1(c)(1) & 2B1.1(b)(1)(I): 16 level increase based on a loss amount of $2,601,568.47, which is the gross gain to defendant resulting from his participation in the offense of conviction and relevant conduct; and

- 3B1.3: use of special skill/abuse of position of trust.

The parties have no other joint recommendations as to the defendant's guideline calculation.

### D.    Parties' Obligations

Both the defendant and the government agree not to take any position or make any statement that is inconsistent with any of the guideline recommendations or factual stipulations in paragraphs 10.B, 10.C, or 10.D. Neither party is otherwise restricted in what it may argue or present to the Court as to the defendant's guideline calculation.

### E.    Not a Basis to Withdraw

The defendant understands that he will have no right to withdraw

from this agreement or withdraw his guilty plea if he disagrees, in any

way, with the guideline range determined by the Court, even if that

guideline range does not incorporate the parties' recommendations or

factual stipulations in paragraphs 10.B, 10.C, or 10.D. The government

likewise has no right to withdraw from this agreement if it disagrees with

the guideline range determined by the Court.

## 11.    Imposition of Sentence

### A.    Court's Obligation

The defendant understands that in determining his sentence, the

Court must calculate the applicable guideline range at sentencing and

must consider that range, any possible departures under the sentencing

guidelines, and the sentencing factors listed in 18 U.S.C. § 3553(a), and

apply any applicable mandatory minimums.

### B.    Imprisonment

#### 1.    Recommendation

Under Federal Rule of Criminal Procedure 11(c)(1)(B), the

government will recommend that the defendant's sentence of

imprisonment not exceed the midpoint of the defendant's guideline range as determined by the Court.

### 2. No Right to Withdraw

The government's recommendation in paragraph 11.B.1 is not binding on the Court. The defendant understands that he will have no right to withdraw from this agreement or withdraw his guilty plea if the Court decides not to follow the government's recommendation. The government likewise has no right to withdraw from this agreement if the Court decides not to follow the government's recommendation. If, however, the Court rejects or purports to reject any other term or terms of this plea agreement, the government will be permitted to withdraw from the agreement.

### C. Supervised Release

### 1. Recommendation

The parties have no agreement as to supervised release.

### 2. No Right to Withdraw

The parties' recommendation is not binding on the Court. The defendant understands that he will have no right to withdraw from this agreement or withdraw his guilty plea if the Court decides not to follow the parties' recommendation. The defendant also understands that the

government's recommendation concerning the length of the defendant's sentence of imprisonment, as described above in paragraph 11.B.1, will not apply to or limit any term of imprisonment that results from any later revocation of the defendant's supervised release.

### D.    Fines

The parties have no agreement as to a fine.

### E.    Forfeiture

Pursuant to Fed. R. Crim. P. 32.2 and 18 U.S.C. § 982(a)(7), to the extent necessary to satisfy the forfeiture money judgment agreed upon herein, the defendant agrees to forfeit to the United States all property, real or personal, that constitutes or is derived, directly or indirectly, from the gross proceeds traceable to his violation of 21 U.S.C. § 331(t) and the scheme and conspiracy as charged in the Indictment.

In addition, the defendant agrees to the entry of a personal forfeiture money judgment against him in favor of the United States in the amount of **Two Million Six Hundred One Thousand Five Hundred Sixty-Eight Dollars and 47/100 ($2,601,568.47),** representing the gross proceeds he personally obtained as a result of his violation of Count 11 and the scheme and conspiracy described in the Indictment.

The defendant agrees to the entry of one or more orders of forfeiture, including a Preliminary Order of Forfeiture, containing the above referenced forfeiture money judgment, upon application by the United States at, or any time before, his sentencing. The defendant agrees that the forfeiture order will be final and effective upon entry by the Court.

The defendant acknowledges that he purchased and/or maintained the following assets with proceeds derived from his commission of the scheme and conspiracy described in the Indictment, and that the United States may forfeit these assets as proceeds traceable to the commission of his offense:

- Real property located at 559 Barrington Park Dr., Bloomfield Hills, Michigan, 48304; and

- Real property located at 3190 Bloomfield Park Dr., West Bloomfield, Michigan, 48323

(the "Subject Property").

The United States and the defendant are entering into a separate written agreement regarding the real property located at 559 Barrington Park Dr., Bloomfield Hills, Michigan, 48304 ("559 Barrington"). The Parties have agreed that the defendant shall be allowed to independently market and sell 559 Barrington for six (6) months. If sold, the defendant

agrees that he shall pay the net proceeds of the sale of 559 Barrington, up to the amount of **Two Million Six Hundred One Thousand Five Hundred Sixty-Eight Dollars and 47/100 ($2,601,568.47),** to the United States Marshals Service as a voluntary payment towards his forfeiture money judgment. In exchange, the United States shall release its *lis pendens* against 559 Barrington and credit the net proceeds received toward the defendant's forfeiture money judgment. If the defendant is not able to independently sell 559 Barrington within 6 months of the docket date of the defendant's Plea Agreement, the United States will move to forfeit the 559 Barrington property. The defendant will cooperate with the government as requested by the government in connection with the government's efforts to forfeit 559 Barrington. The defendant agrees that he will cooperate with the United States by taking whatever steps are necessary to deliver possession of, and clear title to, 559 Barrington under this agreement and will execute such legal documents as may be required to transfer title to the United States and by taking whatever steps are necessary to ensure that 559 Barrington is not disbursed, hidden, wasted or otherwise made unavailable for forfeiture. If any other person or entity has any interest in 559 Barrington, the defendant will provide the government with the name

and address of the person or entity that has an interest in, and/or possession of, 559 Barrington, and assist the government in obtaining a release of interest from any such other person or entity.

The defendant waives his right to have a jury determine the forfeitability of his interest in 559 Barrington as provided by Fed. R. Crim. P. 32.2(b)(5).

As part of his agreement to forfeiture, the defendant agrees to make voluntary monthly payments on any remaining forfeiture money judgment balance beginning 30 calendar days from the imposition of the criminal judgment at a continuing monthly rate of at least $5,000.00. The defendant agrees failure to pay his monthly forfeiture money judgment payment, or cure delinquency within 30 days, shall be considered default, and the United States may move to forfeit any property owned or under the control of the defendant to satisfy the forfeiture money judgment.

The defendant agrees that any outstanding forfeiture money judgment balance shall be paid within 36 months of the imposition of the criminal judgment. Payments shall be made to "United States Marshals Service" with reference to the defendant's full name and case number, and delivered to:

USMS – EDMI
Attn.: Shannon Alexander
Theodore Levin U.S. Courthouse
231 W. Lafayette Blvd.
Detroit, MI 48226

The United States' *lis pendens* shall remain on the Subject Property, except as addressed above regarding sale of 559 Barrington, until the forfeiture money judgment is paid in full.

Subject to the preceding paragraphs, if the forfeiture money judgment is not paid in full within 36 months of the imposition of the criminal judgment, the defendant explicitly agrees to the forfeiture of any other assets he may have as substitute assets under 21 U.S.C. § 853(p)(2) and waives and relinquishes his right to oppose the forfeiture of substitute assets under 21 U.S.C. § 853(p)(1) or otherwise. Defendant agrees to cooperate with the government in connection with the government's efforts to identify, locate, seize, and forfeit substitute assets and agrees to take whatever steps are necessary to deliver possession of, and clear title to, any property identified for forfeiture and will execute such legal documents as may be required to transfer title of the property to the United States. The defendant shall take whatever steps are necessary to ensure that his property is not sold, disbursed, hidden, wasted or otherwise made unavailable for forfeiture.

The defendant waives the requirements of Fed. R. Crim. P. 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, pronouncement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant acknowledges that he understands that the forfeiture of property is part of the sentence that may be imposed in this case and waives any failure by the Court to advise him of this, pursuant to Fed. R. Crim. P. 11(b)(1)(J), at the time his guilty plea is accepted. The defendant waives his right to have a jury determine the forfeitability of his interest in the Subject Property as provided by Fed. R. Crim. P. 32.2(b)(5).

The defendant knowingly, voluntarily, and intelligently waives any statutory and constitutional challenge to the above-described forfeiture including any challenge based upon the Excessive Fines Clause of the Eighth Amendment to the United States Constitution.

### F.    Special Assessment

The defendant understands that he will be required to pay a special assessment of $100, due immediately upon sentencing.

## 12.   Appeal Waiver

The defendant waives any right he may have to appeal his conviction on any grounds. The defendant also waives any right he may

have to appeal his sentence on any grounds, unless his sentence of imprisonment exceeds the top of the guideline range as determined by the Court.

## 13. Collateral Review Waiver

The defendant retains the right to raise claims alleging ineffective assistance of counsel or prosecutorial misconduct, as long as the defendant properly raises those claims by collateral review under 28 U.S.C. § 2255. The defendant also retains the right to pursue any relief permitted under 18 U.S.C. § 3582(c), as long as the defendant properly files a motion under that section. The defendant, however, waives any other right he may have to challenge his conviction or sentence by collateral review, including, but not limited to, any right he may have to challenge his conviction or sentence on any grounds under 28 U.S.C. § 2255 (except for properly raised ineffective assistance of counsel or prosecutorial misconduct claims, as described above), 28 U.S.C. § 2241, or Federal Rule of Civil Procedure 59 or 60.

## 14. Remedies for Withdrawal, Breach, Rejection, or Vacatur

If the defendant is allowed to withdraw his guilty plea or breaches this agreement, or if the Court rejects this agreement, or if the defendant's conviction or sentence under this agreement is vacated, the

government may reinstate any charges against the defendant that were dismissed as part of this agreement and may file additional charges against the defendant relating, directly or indirectly, to any of the conduct underlying the defendant's guilty plea or any relevant conduct. If the defendant has been permitted to plead guilty to a lesser-included offense, the government may also reinstate any charges or file any additional charges against the defendant for the greater offense, and the defendant waives his double-jeopardy rights with respect to the greater offense. If the government reinstates any charges or files any additional charges as permitted by this paragraph, the defendant waives his right to challenge those charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

## 15. Use of Withdrawn Guilty Plea

The defendant agrees that if he is permitted to withdraw his guilty plea for any reason, he waives all of his rights under Federal Rule of Evidence 410, and the government may use his guilty plea, any statement that the defendant made at his guilty plea hearing, and the factual basis set forth in this agreement, against the defendant in any proceeding.

**16.   Parties to Plea Agreement**

This agreement does not bind any government agency except the United States Attorney's Office for the Eastern District of Michigan.

**17.   Scope of Plea Agreement**

This plea agreement is the complete agreement between the parties and supersedes any other promises, representations, understandings, or agreements between the parties concerning the subject matter of this agreement that were made at any time before the guilty plea is entered in court. Thus, no oral or written promises made by the government to the defendant or to the attorney for the defendant at any time before the defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this plea agreement. If the parties have entered, or subsequently enter, into a written proffer or cooperation agreement, though, this plea agreement does not supersede or abrogate the terms of that agreement. This plea agreement also does not prevent any civil or administrative actions against the defendant, or any forfeiture claim against any property, by the United States or any other party.

**18.    Acceptance of Agreement by Defendant**

This plea offer expires unless it has been received, fully signed, in the United States Attorney's Office by 5:00p.m. on May 29, 2025. The government may withdraw from this agreement at any time before the defendant pleads guilty.

Jerome F. Gorgon, Jr.
United States Attorney

Ryan A. Particka
Chief, White Collar Crime Unit
Assistant United States Attorney

Andrew J. Lievense
Assistant United States Attorney

Dated: 5/21/2025

By signing below, the defendant and his attorney agree that the defendant has read or been read this entire document, has discussed it with his attorney, and has had a full and complete opportunity to confer with his attorney. The defendant further agrees that he understands this entire document, agrees to its terms, has had all of his questions answered by his attorney, and is satisfied with his attorney's advice and representation.

Peter Deegan
Attorney for Defendant

Naveed Aslam
Defendant

Dated:   5/28/25